# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHRIEVE CHEMICAL PRODUCTS LLC) <br> ) <br> ) <br> **Plaintiff,** ) <br> v. ) <br> ) <br> U.S. CUSTOMS AND BORDER ) <br> PROTECTION; RODNEY SCOTT, IN ) <br> HIS CAPACITY AS COMMISSIONER ) <br> OF U.S. CUSTOMS AND BORDER ) <br> PROTECTION; AND THE ) <br> UNITED STATES OF AMERICA. ) <br> ) <br> **Defendants.** ) | Court No. 26- 01167 |

## COMPLAINT

Plaintiff, Shrieve Chemical Products LLC (Plaintiff), a limited liability company organized and existing under the laws of the State of Texas, brings this action against Defendants U.S. Customs and Border Protection ("CBP"), Rodney Scott, in his official capacity as Commissioner of U.S. Customs and Border Protection (the "Commissioner"), and the United States of America ("United States") (collectively, the "Defendants"), allege and complains as follows:

1. This action seeks relief with respect to certain import duties that President Donald Trump imposed, via Executive Orders, pursuant to the purported authority of the International Emergency Economic Power Act ("IEEPA"), 50 U.S.C. §1701 *et seq.*

2. Beginning in February 2025, through a series of Executive Orders, the President invoked IEEPA as authority to impose new and substantial tariffs ("IEEPA Duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these duties on its imported goods.

3. IEEPA does not authorize the imposition of these duties. A three-judge panel of this Court and the Court of Appeals for the Federal Circuit, sitting *en banc*, have already so held. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert.* granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

4. Plaintiff seeks refund, with interest, of IEEPA Duties already paid to the United States, as well as those that it may continue to pay.

5. Plaintiff seeks a declaratory judgment enjoining the future imposition and collection of IEEPA Duties from Plaintiff on Plaintiff's Entries of imported goods.

6. Plaintiff further seeks to preliminarily enjoin liquidation of Entries for which it has deposited IEEPA Duties, to preserve its ability to obtain refunds of all amounts that the government has unlawfully collected.

## PARTIES

7. Plaintiff was the importer of record into the United States of certain products and paid IEEPA Duties incident to importation. Plaintiff also intends to continue to import products into the United States that are currently subject to IEEPA Duties, and thus, may be forced to pay additional duties in the future if enforcement of those tariffs is not enjoined. Plaintiff is, therefore, a "person adversely affected or aggrieved by agency action" within the meaning of 5 U.S.C. § 702 and 28 U.S.C. § 2631(i).

8. Defendant U.S. Customs and Border Protection ("CBP") is a component of the U.S. Department of Homeland Security and is responsible for collecting IEEPA Duties at the border.

9. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

10. Defendant United States of America received the duties paid by Plaintiff pursuant to the IEEPA tariffs and is a statutory Defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

## JURISDICTION

11. The Court possesses exclusive subject matter jurisdiction to entertain this action pursuant to 28 U.S.C. §1581(i). *V.O.S. Selections*, 149 F.4th 1329.

12. This action is timely because all claims have accrued within the last two years. 28 U.S.C. § 2636(i).

13. Plaintiff has standing to bring this action because it is the importer of record for goods imported into the United States from countries subject to IEEPA Duties. As a result of CBP's application of the Executive Orders challenged in this lawsuit, Plaintiff has paid IEEPA Duties to the United States and thus has suffered injury caused by those orders. Declaratory and injunctive relief from this Court or an award of money damages pursuant to 28 U.S.C. § 2643(a)(1) would address those injuries.

14. The Court possesses all the powers in law and equity of, or as conferred by statute upon, a district court of the United States. 28 U.S.C. § 1585. The Court may enter a money judgment for or against the United Sates in any civil action commenced under 28 U.S.C. § 1581 or 28 U.S.C. § 1582 and may also order any other form of relief that is appropriate in a civil action, including but not limited to declaratory judgments, orders of remand,

injunctions, and writs of mandamus and prohibition. 28 U.S.C. § 2643(a)(1), (c)(1).

## BACKGROUND

15. Pursuant to a series of Executive Orders issued by the President, beginning on February 1, 2025, CBP began collecting IEEPA Duties.

16. First, on February 1, 2025, alleging that the United States faced a national emergency from fentanyl abuse, President Trump issued three executive orders imposing additional duties on imports from Canada, Mexico, and China. Collectively, these are called the "Trafficking Tariffs."

17. The Executive Order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9, 117 (Feb. 7,2025), *Imposing Duties to Address the Situation at Our Southern Border*("Mexico Order"), imposed an additional 25% percent tariff on the import of goods from Mexico, premised upon a "grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States." *Id.*

18. The Executive Order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113 (Feb. 7, 2025), *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Order"), declared an emergency because of opioid trafficking, and also imposed a 25 percent tariff, with certain exceptions.

4

19. Lastly, the Executive Order directed at China, Executive Order 14195, 90 Fed. Reg. 9,121 (Feb. 7, 2025), *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Order"), also declared an emergency because of opioid trafficking, declaring that the "sustained influx of synthetic opioids" was a national emergency and that "many PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substance in the flow of legitimate commerce."

20. The China Order imposed an additional 10 percent *ad valorem* duty on products from China imported into the United States in addition to all existing duties.

21. Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of Cina,* 90 Fed. Reg. 9,277, (Feb. 11, 2025) ("February 5Amendment") and then again, next month on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, 90 Fed. Reg. 11,463 (Mar. 7, 2025), *Further Amendment to Duties addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20 percent and justified this increase by

claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

22. On April 2, 2025, contending that trade deficits with certain trading partners qualified as a national emergency, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 (April 7, 2025) ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that contribute to Large and Persistent Annual United States Goods Trade Deficits*. The Reciprocal Tariff Order imposed a 10 percent baseline duty on nearly all imports to the United States, effective April 5 and additional "reciprocal" duties on 57 countries, effective April 9, *Id.* at Annex I. These higher country-specific rates range from 11 to 50 percent. *Id*

23. The President issued additional executive orders modifying or deferring the application of earlier orders. The President repeatedly amended the China specific Reciprocal Tariff rate. He first increased the China-specific rate from 34 to 84 percent effective April 8, 2025, Executive Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low Value Imports From the People's Republic of China*, 90 Fed. Reg. 15,509,(Apr. 8, 2025), and then from 84 to 125 percent effective April 10, 2025, Executive Order No. 14266, 90 Fed. Reg. 15,626 (Apr. 15, 2025).The government modified the Harmonized Tariff Schedule of the United States (HTSUS) to reflect the higher rates. Executive Order No. 14259, 90 Fed. Reg. 15,509; Executive

Order No. 14266, 90 Fed. Reg. at 15,626. Following discussions with Chinese officials, the President lowered the China-specific Reciprocal Tariff rate to 10 percent, effective until August 12, 2025, observing that these discussions were "a significant step by China toward remedying non-reciprocal trade arrangements and addressing the concerns of the United States relating to economic and national security matters." Executive Order No. 14298, *Modifying Reciprocal Tariff Rates to Reflect Discussions with the People's Republic of China,* 90 Fed. Reg. 21,831-32 (May12, 2025). On July 7, 2025, the President paused enforcement of all Reciprocal Tariffs until August 1, 2025. Executive Order No. 14316, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823 (July 7, 2025). On July 31, 2025, the President again paused enforcement of the Reciprocal Tariffs for seven days. Executive Order No. 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963-4 (July 31, 2025). The Reciprocal Tariffs (other than for China) took effect on August 7, 2025

24. Plaintiff challenges all of the Executive Orders identified in the above paragraphs ("Challenged Executive Orders"), each of which the Federal Circuit held unlawful in *V.O.S. Selections*, 149 F4th at 1340, and affirmed by the U.S Supreme Court on February 20, 2026, 607 U.S. \_\_\_\_(2026).

## DISCUSSION

**PLAINTIFF ASSERTS:**

25. IEEPA does not authorize the President to impose duties.

26. IEEPA limits the President's powers to (A) the ability to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or imports of "currency or securities," 50 U.S.C. § 1702(a)(1)(A); (B) control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and which is also subject to jurisdiction of the United States; 50 U.S.C. § 1702(a)(1)(B); and (C) only if the United States is engaged in "armed hostilities" or has been attacked by a foreign country, the President may "confiscate" property of such a foreign person or country that also is subject to jurisdiction of the United States. 50 U.S.C. § 1702(a)(1)(C). IEEPA confers no other power.

27. IEEPA does not use the word "tariff" or any similar term in setting forth the powers that Congress delegated to the President under its Article I authority.

28. Given the statute's plain language, the Federal Circuit, sitting *en banc*, explained that "the trafficking Tariffs imposed by the Challenged Executive Orders exceed the authority delegated to the President by IEEPA's text." *V.O.S. Selections*, 149 F4th at 1340. And as a result, the Trafficking and Reciprocal Tariffs are "invalid as contrary to law." Id. (quoting *V.O.S.*

*Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383-84 (Ct. Int'l Trade 2025)).

29. The United States Supreme Court granted a writ of *certiorari* to review the decision of the Federal Circuit in *V.O.S. Selections*. By Judgment dated February 0, 2026, the Supreme Court affirmed holding that IEEPA does not authorize the President to impose Tariffs see 607 U.S ____(2026).

30. Accordingly, *V.O.S. Selections* directly controls this action because Plaintiff is in an identical position to the Plaintiffs in that case.

31. The United States Constitution provides that "Congress shall have Power to lay and collect Taxes, Duties, Imposts and Excises…" U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause"), and "to regulate Commerce with foreign Nations." Id., cl. 3 ("Commerce Clause"). The Constitution grants this power exclusively to Congress and thus withheld it from the President. U.S. CONST. art. I § 1.

32. Although, under some circumstances, Congress may delegate authority to the President to impose duties on imports, any such delegation under IEEPA would be an unconstitutional delegation of congressional authority.

33. To the extent it is ever permissible under the Constitution for Congress to delegate any part of its Article I powers to the President, it must do so, at a minimum, by providing an intelligible principle to direct and cabin the

9

President's authority. See generally *Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482 (2025).

34. IEEPA provides absolutely no intelligible principle for the President to follow and thus, if interpreted to encompass the collection of duties, IEEPA would not provide checks preventing the President from appropriating all of Congress's Article I power to impose tariffs.

## COUNT I

35. Plaintiff incorporates paragraphs 1- 34 above by reference as though set out in full.

36. The Government's collection of IEEPA Duties is unlawful because the President exceeded his statutory authority in using the challenged executive orders imposing tariff on entries of merchandise. Alternatively, and despite IEEPA's plain language limiting delegated powers, to the extent that Congress had delegated authority to impose tariffs under IEEPA, that delegation should be struck down as unconstitutional because it lacked any intelligible principle for the President to follow in exercising those delegated powers.

37. Plaintiff respectfully requests that the Court apply its precedent and the binding Federal Circuit precedent to declare the Challenged Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order reliquidation or liquidation of all Plaintiff's entries of

merchandise which it has or will in the future pay any IEEPA Duties, and refund all IEEPA Duties collected from Plaintiff, with interest as provided by law.

## COUNT II

38. Plaintiff incorporates paragraphs 1- 37 above by reference as though set out in full.

39. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

40. Plaintiff's claims present actual controversies as to the President's statutory authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

41. Plaintiff is the importer of record and has suffered injury by the requirement that it pay IEEPA Duties because of the unlawful Challenged Tariff Orders.

42. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting duties, as to Plaintiff.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Honorable Court enter judgment:
   a) declare that the President lacks authority under IEEPA to set tariffs;

b) declare that the Challenged Executive Orders are *ultra vires* and void *ab initio* with respect to Plaintiff.

c) declare with respect to Plaintiff, CBP lacks authority to implement and collect any duties set out in the HTSUS that are based on the Challenged Tariff Orders;

d) With respect to Plaintiff, enjoin Defendants from imposing and enforcing any duties set out in the HTSUS that are based on the Challenged Executive Orders;

e) Order the United States to refund to Plaintiff all IEEPA Duties collected on merchandise imported by Plaintiff, with interest as provided by law;

f) Award Plaintiff their reasonable costs, including attorney fees, incurred in bringing this action; and

g) Grant such further relief as this Court deems proper.

                                                  Respectfully submitted,

Dated: February 24, 2026

/s/ Herbert J. Lynch
Herbert J. Lynch
Lead Attorney

Counsel for Plaintiff
Shrieve Chemical Products LLC

**SULLIVAN & LYNCH, P.C.**
800 Turnpike Street, Suite 300
North Andover, MA 01845
(617) 591-8787 (telephone)
Email: lynch@s-l.com

12